1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JAMES MATTHEW,                                CASE NO. CV F 11-1999 LJO BAM

                              Plaintiff,      **SUMMARY JUDGMENT DECISION**
            vs.                               (Doc. 18.)

RPH ON THE GO USA, INC.,
et al.,

                              Defendants.

_____/

**INTRODUCTION**

        Defendant RPH on the Go USA, Inc. ("RPH") seeks summary judgment that pro se plaintiff James Matthew's ("Mr. Matthew's") disability benefits claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and that ERISA imposes no liability on RPH as Mr. Matthew's employer.  Mr. Matthew filed no timely opposition to summary judgment for RPH.  This Court considered RPH's summary judgment decision on the record[1] and VACATES the February 20, 2013 hearing, pursuant to Local Rule 230(c), (g).  For the reasons discussed below, this Court GRANTS RPH summary judgment.

---

[1]        In the absence of Mr. Matthew's timely opposition, this Court carefully reviewed and considered the entire record to determine whether RPH's summary judgment motion is well supported.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper.  This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.

1

1

**BACKGROUND**

2

**Summary**

3       Mr. Matthew is a registered pharmacist and was employed during 2007-2009 by RPH, a staffing

4   agency which supplied pharmacists to retail pharmacies.  Mr. Matthew claims disability during January

5   14, 2009 to April 30, 2009 and that RPH and defendant MPS Group, Inc. ("MPS")[2] wrongly denied Mr.

6   Matthew short-term disability benefits.  Mr. Matthew pursues against RPH claims for failure to pay

7   short-term disability benefits and to provide disability plan documents as well as for declaratory relief.

8   RPH challenges Mr. Matthews' claims as ERISA preempted and not actionable against RPH.

9

**Disability Plan**

10       MPS and Hartford-Comprehensive Benefit Service Company ("Hartford") provided a Salary

11   Continuation Program ("disability plan") which RPH identifies as the disability plan "in question."

12   Under the disability plan, Hartford, as claims evaluator:

13           1.       Determines "if an employee is entitled to Salary Continuation according to the terms and

14                    conditions of the Program";

15           2.       Reviews claims and proofs of loss; and

16           3.       "[R]eserves the right to determine if an employee's proof of loss is satisfactory."

17       The disability plan provides that an "employee's coverage will start on the date he becomes

18   eligible," which as RPH explains, for most employees is the disability plan's start date.  However, the

19   disability plan further provides that "if a disabling condition causes that employee to be absent work on

20   the date his coverage is to start," the effective date of coverage "will be deferred until he has been

21   Actively at Work for one full work day."

22       RPH notes the absence of its determination whether disability plan benefits are paid or denied

23   and its disability plan operation.

24

**Mr. Matthews' Disability And Coverage**

25       Mr. Matthew's physician submitted a January 29, 2009 certificate for State of California

26   disability benefits to note that Mr. Matthews underwent aortic valve replacement on January 14, 2009

27

28       [2]       MPS has not been served with process and has not appeared in this action.

and was hospitalized until January 20, 2009.  Mr. Matthew's physician indicated May 1, 2009 as Mr.

Matthew's anticipated return to work.  Mr. Matthew did not return to work until June 2009.  RPH notes

the absence of dispute that Mr. Matthew was disabled prior to February 1, 2009.

Mr. Matthew completed his 2009 employee benefits election form ("election form") on January

28, 2009 and mailed it to MPS.  The election form indicates February 1, 2009 as the effective date of

all insurance coverage.  RPH notes that Mr. Matthew was informed that prior to selecting this insurance

coverage that it would be effective February 1, 2009.

Mr. Matthew's February 16, 2009 email to RPH Human Resources Director Tina Musgrove

("Ms. Musgrove") asked "whether I am entitled to disability thru MPS as I have state disability going.

Is the MPS a separate payment or am I entitled to just one or the other?"  Ms. Musgrove's February 16,

2009 email responded that "you'll get the fastest answers by calling MPS."  In his deposition, Mr.

Matthew testified that "[a]t this point in time," Ms. Musgrove "referred me to MPS for answers to my

questions" and directed him to MPS staff to address disability issues.

The March 20 and 23, 2009 letters of Gary Rose ("Mr. Rose"), Mr. Matthew's former attorney,

requested MPS human resources department for "the complete benefit plan document relative to the

Short and Long Term Disability Plans available through MPS."  Mr. Matthews testified that "it looks

like [Mr. Rose] made several attempts" to inquire into Mr. Matthew's benefits.  RPH points out that on

June 10, 2009, MPS provided Mr. Rose the disability plan.  Mr. Rose's June 12, 2009 letter informed

Mr. Matthews of a "reply from the Senior Vice-President of Human Resources at MPS Group":

> He claims that RPh did not have a short-term disability insurance policy, and therefore its consultants and employees were required to utilize any available State Disability Insurance when they became ill.
> . . .
>
> In a jinx of bad timing, your disability occurred before the effective date of coverage.  The enclosed policy expressly provides, at page 5, that if you were already out on disability on the first date the policy applies to you, you are not eligible for benefits until after that period of disability is over and you are back at work.
>
> . . .
>
> He promised to get me the paperwork confirming that the RPh folks had an effective date of coverage as of February 1, 2009 . . . .

/ / /

3

**Mr. Matthew's Claims**

Mr. Matthews proceeds on his Complaint for Damages ("complaint") to allege that he "was disabled and off work due to surgery" and that RPH and MPS wrongly refused to pay benefits for his disability during January 14, 2009 to April 30, 2009 and to provide plan documents.

**DISCUSSION**

**Summary Judgment Standards**

RPH seeks summary judgment given ERISA preemption of and the absence of RPH's liability for the complaint's claims for failure to pay benefits and to provide disability plan documents and for declaratory relief.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

4

1  summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

2  S.Ct. 2505 (1986)

3    "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

4  court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

5  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Sec. Clearance Office*, 895

6  F.2d 563, 574 (9th Cir. 1990). "As to materiality, the substantive law will identify which facts are

7  material.  Only disputes over facts that might affect the outcome of the suit under the governing law will

8  properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

9    "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

10  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

11  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

12  of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

13  make the showing sufficient to establish the existence of an element essential to that party's case, and

14  on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine

15  issue as to any material fact,' since a complete failure of proof concerning an essential element of the

16  nonmoving party's case necessarily renders all other facts immaterial.")

17    F.R.Civ.P. 56(e)(3) provides that when a party "fails to properly address another party's assertion

18  of fact," a court may "grant summary judgment if the motion and supporting materials – including the

19  facts considered undisputed – show that the movant is entitled to it."  "In the absence of specific facts,

20  as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported

21  summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d

22  1538, 1545 (9th Cir. 1988).  When a summary judgment motion is unopposed, a court must "determine

23  whether summary judgment is appropriate – that is, whether the moving party has shown itself to be

24  entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168,

25  175 (3rd Cir. 1990).  A court "cannot base the entry of summary judgment on the mere fact that the

26  motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece*

27  *of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all

28  of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion

5

1   itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

2       As discussed below, the record reveals that RPH is entitled to summary judgment.

3   **Failure To Pay Benefits**

4       The complaint's (second) bad faith failure to pay claim alleges that RPH and MPS "were subject

5   to the implied-in-fact duty to act fairly and in good faith in order not to deprive Plaintiff of the benefits

6   of the employee benefit plan" and acted "in bad faith in refusing to pay Plaintiff's claim for disability."

7   ***ERISA Employee Benefit Plan***

8       RPH argues that Mr. Matthew's dispute over disability plan benefits is "exclusively a federal

9   concern" given its challenge over "administration of ERISA plan benefits."  RPH characterizes the

10  disability plan as an ERISA employee welfare plan.

11      ERISA covers "any employee benefit plan."  29 U.S.C. § 1003(a).  An employee benefit plan

12  includes "an employee welfare benefit plan or an employee pension benefit plan."  29 U.S.C. § 1002(3).

13  An employee welfare benefit plan is "any plan, fund, or program . . . established or maintained by an

14  employer . . . to the extent that such plan, fund, or program was established or is maintained for the

15  purpose of providing for its participants . . . disability . . .

16      "ERISA is a remedial statute which Congress enacted to protect employee pension benefit rights

17  and to protect employers from conflicting and inconsistent state and local regulations of pension benefit

18  plans."  *Shaw v. Delta Air Lines*, 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-97 (1983).   ERISA

19  "comprehensively regulates employee pension and welfare plans."  *Metropolitan Life Ins. Co. v.*

20  *Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380 (1985).

21      The record confirms that the disability plan is an employee welfare benefit plan covered by

22  ERISA.

23  ***ERISA Preemption***

24      RPH contends that ERISA preempts Mr. Matthews' common and state law claims.

25      ERISA's preemption clause states that ERISA's provisions "shall supersede any and all State

26  laws insofar as they may now or hereafter relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a).

27  ERISA's preemption clause is "deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-

28  46, 107 S.Ct. 1549 (1987), and "contains one of the broadest preemption clauses ever enacted by

1  Congress." *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993) (citations omitted).

2          "ERISA's preemption clause is conspicuous for its breadth, establishing as an area of exclusive

3  federal concern the subject of every State law that 'relates to' an employee benefit plan governed by

4  ERISA." *Marshall v. Bankers Life & Casualty Co.*, 2 Cal.4th 1045, 1051, 10 Cal.Rptr.2d 72 (1992); *see*

5  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147, 121 S.Ct. 1322 (2001) (a state law relates to an

6  ERISA plan "if it has a connection with or reference to such a plan"); *Spain*, 11 F.3d at 131 ("a state

7  cause of action relates to an ERISA benefit plan if operation of the law impinges on the functioning of

8  an ERISA plan").

9          In *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir. 1990), the Ninth Circuit emphasized

10  ERISA preemption of state law claims:

11          ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) (1982), creates an
           exclusive remedial scheme. The Supreme Court has concluded that this provision
12         preempts state law claims brought in conjunction with an ERISA civil enforcement suit:
           "The deliberate care with which ERISA's civil enforcement remedies were drafted and
13         the balancing of policies embodied in its choice of remedies argue strongly for the
           conclusion that ERISA's civil enforcement remedies were intended to be exclusive."
14         *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39
           (1987) . . .
15
           We do not read *Pilot Life* to permit state law claims in addition to the claims
16         actionable under ERISA.

17          In sum, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil

18  enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive

19  and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488 (2004).

20  "Thus ERISA preempts state laws which either directly or indirectly relate to an employee benefit plan."

21  *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985).  "ERISA preempts common law

22  theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit,

23  and breach of contract.  *Ellenburg*, 763 F.2d at 1095.  Causes of action "for the improper handling of

24  claims under benefit plans have been held to be directly connected with the employee benefit plan and

25  thus preempted by ERISA."  *Ellenburg*, 763 F.2d at 1095.

26          RPH argues that the ERISA disability plan obligates Mr. Matthew to ERISA's civil enforcement

27  scheme given that Mr. Matthew seeks to enforce rights under an employee welfare benefit plan.  RPH

28  holds Mr. Matthew to ERISA enforcement, not his claims in this action.

1    RPH is correct.  Given that the disability plan is subject to ERISA, Mr. Matthew is obligated to

2    pursue claims pursuant to ERISA's civil enforcement scheme, not this action.  ERISA preempts the

3    complaint's claims.

4                                    ***Improper Defendant***

5        RPH characterizes itself as an improper defendant as an employer in that Ninth Circuit "decisions

6    have indicated that only a benefit plan itself or the plan administrator of a benefit plan covered under

7    ERISA is a proper defendant in a lawsuit" under 29 U.S.C. § 1132(a)(1)(B) ("section 1132(a)(1)(B)").[3]

8    *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1204 (9th Cir. 2011).   In *Cyr*, the Ninth Circuit

9    concluded that section 1132(a)(1)(B) "does not support that limitation, however, and that an entity other

10   than the plan itself or the plan administrator may be sued under that statute in appropriate

11   circumstances."  *Cyr*, 642 F.3d at 1207 (insurer which denied benefits and was liable to pay benefits as

12   plan insurer was a proper defendant).

13       RPH points to the absence of "appropriate circumstances" to name it as a defendant given the

14   absence of evidence of its approval or denial of disability plan benefits, operation of the disability plan,

15   or any other disability plan function.  RPH notes that it directed Mr. Matthew to contact MPS with

16   disability plan issues and that Mr. Rose, Mr. Matthew's former attorney, addressed concerns to MPS,

17   not RPH.  RPH concludes it is an improper defendant as it "is not responsible for the payment of

18   benefits."

19       RPH is an improper defendant in connection with Mr. Matthew's disability plan rights.  The

20   record suggests nothing to impose ERISA liability on RPH as a mere employer.

21                                   ***Absence Of Application***

22       RPH faults the absence of evidence that Mr. Matthew submitted a disability benefits claim to

23   support the complaint's bad faith failure to pay claim.  RPH notes that the evidence is limited to Mr.

24   Matthew's inquiry to RHP human resources about the disability policy, RHP's referral of Mr. Matthew

25   to MPS, and Mr. Rose's communication with MPS which provided the disability plan to Mr. Rose.

26

27        [3]       Section 1132(a)(1)(B) provides that a plaintiff may seek "to recover benefits due to him under the terms
     of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the
28   plan."

1    The absence of evidence of Mr. Matthew's application further dooms the complaint's claims.

2                    ***Mr. Matthew's Ineligibility For Benefits***

3    RPH argues that Mr. Matthew was ineligible for benefits because he was disabled on February

4    1, 2009, the effective date of coverage.

5    The complaint alleges that Mr. Matthew was disabled during January 14, 2009 to April 30, 2009.

6    Mr. Matthew's physician submitted a January 29, 2009 certificate to note that Mr. Matthews underwent

7    aortic valve replacement on January 14, 2009 and was not expected to return to work until May 1, 2009.

8    The disability plan provides that if an employee's disability prevents attendance on the start date of

9    coverage, the effect date of coverage is "deferred until he has been Actively at Work for one full work

10   day." Mr. Matthew completed his election form on January 28, 2009 and mailed it to MPS. The

11   election form indicates February 1, 2009 as the effective date of all insurance coverage. Mr. Matthew

12   did not return to work until June 2009 and remained ineligible for disability benefits until his return.

13   Mr. Rose's June 12, 2009 letter correctly explained: "In a jinx of bad timing, your disability occurred

14   before the effective date of coverage." In short, the record reveals that Mr. Matthew was ineligible under

15   the disability plan during the period of his claimed disability.

16                    **Failure To Provide Plan Documents**

17   The complaint's third claim is entitled failure to provide plan documents and faults RPH's and

18   MPS' failure to provide the disability plan.

19   RPH argues that it is not subject to ERISA liability for failure to provide disability plan

20   documents in that it is not the disability plan administrator.

21   29 U.S.C. § 1132(c)(1) sets forth a penalty for failure to provide requested information:

22            Any administrator . . . who fails or refuses to comply with a request for any
         information which such administrator is required by this subchapter to furnish to a
23       participant or beneficiary (unless such failure or refusal results from matters reasonably
         beyond the control of the administrator) by mailing the material requested to the last
24       known address of the requesting participant or beneficiary within 30 days after such
         request may in the court's discretion be personally liable to such participant or beneficiary
25       in the amount of up to $100 a day from the date of such failure or refusal, and the court
         may in its discretion order such other relief as it deems proper.

26

27   "Under 29 U.S.C. § 1132(c), only the plan 'administrator' can be held liable for failing to comply

28   with the reporting and disclosure requirements." *Cline v. Industrial Maintenance Engineering &*

9

*Contracting Co.*, 200 F.3d 1223, 1234 (9th 2000).  ERISA defines an "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i).

RPH points to the absence of evidence that it was the disability plan's administrator given that RPH neither operated the disability plan, made decision to approve or deny benefits, nor performed any other disability plan function.  RPH notes that it directed Mr. Matthew to MPS for disability plan questions and that Mr. Rose communicated with MPS, not RPH.  RPH raises the further point that MPS provided the disability plan to Mr. Rose.

RPH is not the disability plan administrator and thus not liable under ERISA for failure to provide disability plan documents to Mr. Matthew.  The complaint's failure to provide disability plan documents fails as to RPH.

**Declaratory Relief**

The complaint's (first) declaratory relief claim seeks judicial determination of Mr. Matthew's "rights and benefits, based on his employment during his period of disability from January 14, 2009 through April 30, 2009."  RPH argues that the declaratory relief claim fails with failure of the benefits and documents claims in that the declaratory relief claim derives from those other claims.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).  As an  equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred.  *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The complaint fails to support a declaratory relief claim given dismissal of the complaint's other claims.  The complaint fails to substantiate an independent claim for declaratory relief, and such claim is subject to summary judgment.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.      GRANTS RPH summary judgment;

2.      VACATES all pending matters and dates, including the March 20, 2013 pretrial conference; and

/ / /

/ / /

11

1          3.      DIRECTS the clerk to enter judgment in favor of defendant RPH on the Go USA, Inc.

2                  and against plaintiff James Matthew and to close this action.

3          IT IS SO ORDERED.

4    Dated:   __February 8, 2013__        ____/s/  Lawrence J. O'Neill____
                                          UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28